## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ANDREW WOLTERS, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| **v.** ) | |
| ) | **No. 03-3251-KHV** |
| ESTATE OF N.L. CONNER, ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

### MEMORANDUM AND ORDER

Plaintiff, an inmate at the United States Penitentiary in Leavenworth, Kansas (USP-Leavenworth), brings suit against the estate of N.L. Conner, former warden at USP-Leavenworth.  This matter is before the Court on Defendant's Motion To Dismiss, Or In The Alternative, Motion For Summary Judgment (Doc. #101) filed February 18, 2005 and Plaintiff's Reply To Defense Motion (Doc. 101 & 102) And/Or Request For Summary Judgment (Doc. #107) filed March 25, 2005.  For reasons stated below, both motions are overruled.

### Standards For Motions To Dismiss Under Rule 12(b)(6)

A Rule 12(b)(6) motion should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  The Court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences from those facts in favor of plaintiff.  See Shaw v. Valdez, 819 F.2d 965, 968 (10th Cir. 1987).  In reviewing the sufficiency of plaintiff's complaint, the issue is not whether plaintiff

will prevail, but whether plaintiff is entitled to offer evidence to support his claims. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Although plaintiff need not precisely state each element of his claims, he must plead minimal factual allegations on those material elements that must be proved. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In deciding a Rule 12(b)(6) motion based on exhaustion of administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e, the Court may consider administrative materials attached to the prisoner's complaint. See Steele v. Fed. Bur. of Prisons, 355 F.3d 1204, 1212 (10th Cir. 2003), cert. denied, 125 S. Ct. 344 (2004). If the prisoner does not incorporate by reference or attach the relevant administrative decisions, "a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." Id. (quoting GFF, 130 F.3d at 1384).

The Court affords a *pro se* plaintiff some leniency and must liberally construe the complaint. See Oltremari v. Kan. Soc. & Rehab. Serv., 871 F. Supp. 1331, 1333 (D. Kan. 1994). While *pro se* complaints are held to less stringent standards than pleadings drafted by lawyers, *pro se* litigants must follow the same procedural rules as other litigants. See Hughes v. Rowe, 449 U.S. 5, 9 (1980); Green v. Dorrell, 969 F.2d 915, 917 (10th Cir. 1992), cert. denied, 507 U.S. 940 (1993). The Court may not assume the role of advocate for a *pro se* litigant. See Hall, 935 F.2d at 1110.

### Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th

Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." <u>Anderson</u>, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. <u>Id.</u> at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Hicks v. City of Watonga</u>, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." <u>Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.</u>, 912 F.2d 1238, 1241 (10th Cir. 1990); <u>see</u> <u>also</u> <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986); <u>Bacchus Indus., Inc. v. Arvin Indus., Inc.</u>, 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. <u>Applied Genetics</u>, 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the parties opposing the motion for summary judgment." <u>Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.</u>, 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. <u>Anderson</u>, 477 U.S. at 250-51. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." <u>Conaway v. Smith</u>, 853 F.2d 789, 794 (10th Cir. 1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Anderson</u>, 477 U.S. at 251-52.

**Factual Background**

For purposes of defendant's motion for summary judgment, the following facts are uncontroverted, deemed admitted or, where disputed, viewed in the light most favorable to plaintiff.[1]

Plaintiff has been housed in a special housing unit (SHU) at USP-Leavenworth since December 14, 2001. In January of 2003, Warden Conner implemented a new procedure whereby prison staff gave SHU inmates cold dinner meals when they picked up the inmate trays from lunch. Prison staff adjusted the menus so that SHU inmates still received two hot meals each day – at breakfast and lunch.[2]

USP-Leavenworth developed a five-week menu cycle which it repeated throughout 2003. In May of 2003, Mary Van Nortwick, an outside registered dietician, analyzed the menus served in the SHUs

---

[1]     Plaintiff attached a declaration to his opposition brief which appears to relate only to plaintiff's proof of service. See Declaration of Andrew Wolters, attached to Plaintiff's Reply To Defense Motion (Doc. 101 & 102) And/Or Request For Summary Judgment (Doc. #106) filed March 25, 2005. After the title "Proof of Service" on page 9 of plaintiff's opposition brief, plaintiff states that "I, the undersigned, declare and state" and then lists several facts pertaining to proof of service. Plaintiff then states that "I declare under penalty of perjury that the foregoing is true and correct." A strict reading of the declaration indicates that plaintiff's sworn statement is limited to those facts related to proof of service on page 9. Out of an abundance of caution, however, the Court will consider plaintiff's declaration under penalty of perjury to apply to plaintiff's entire opposition brief.

A *pro se* prisoner's complaint, when sworn and made under penalty of perjury, is treated as an affidavit on a motion for summary judgment. See Green v. Branson, 108 F.3d 1296, 1302 (10th Cir. 1997). Here, plaintiff has attached a declaration to his amended complaint which is sworn under penalty of perjury. See Declaration Of Andrew Wolters, attached to Amended Complaint (Doc. #48) filed April 9, 2004. After the declaration, plaintiff has included a proof of service with a declaration which arguably could apply to his entire amended complaint. Again, out of an abundance of caution, the Court will consider plaintiff's amended complaint as made under penalty of perjury.

Plaintiff attached a declaration to his memorandum in support of his own motion for summary judgment, but that declaration does not address the substantive issues in this case. See Declaration Of Andrew Wolters, attached to Memorandum In Support Of Motion With Declaration (Doc. #109) filed April 4, 2005. The Court therefore disregards the declaration as immaterial.

[2]     The cold dinner meal procedure was discontinued in September of 2004.

during 2003.  She found that on average, the menus contained 2,473 calories per day and well over

100 per cent of 17 of 18 nutrients.[3]  In March of 2004, Nortwick analyzed the menus served in the SHUs

during 2004.  She found that on average, the menus contained 2,910 calories per day and over 100 per

cent of 17 of 18 nutrients.[4]  Most of the menu items (such as fruit juices and salads) were never served to

plaintiff.  In addition, in counting the total calories and nutrients, Nortwick included two sandwiches for

dinner even though inmates received only a choice of one of two sandwiches.  From January of 2003

through at least April of 2004, plaintiff suffered extreme fatigue and excessive weight loss because of

inadequate meals.

      Because BOP staff had determined that SHU inmates had used certain fresh fruits to produce

homemade intoxicants, staff served only a few fruits such as bananas, apples, fruit topping, jellies and fruit

juices.  During 2003 and 2004, however, only Muslim inmates in the SHUs received fruits and fruit juices.

Since May of 2003, Muslim inmates have received three meals a day.[5]

------

    [3]      These nutrients include protein, carbohydrates, potassium, iron, calcium, magnesium, phosphorous, zinc, Vitamin A, thiamin B1, riboflavin B2, niacin B3, pyridoxine B6, folate, cobalamin B12, Vitamin C, Vitamin D and dietary fiber.  The menus contained slightly less than 100 per cent of the daily goal of zinc – approximately 98 per cent.
    The 2003 menus contained approximately 93 per cent of the goal for fat, 104 per cent of the goal for sodium and 120 per cent of the goal for cholesterol.

    [4]      Again, the menus contained slightly less than 100 per cent of the daily goal for zinc – approximately 93 per cent.  The 2004 menus contained approximately 106 per cent of the goal for fat, 97 per cent of the goal for sodium and 181 per cent of the goal for cholesterol.

    [5]      Plaintiff states that in May of 2003, a prison guard was stabbed which "proved to be the right course of action in order to receive all meals."  Plaintiff's Reply (Doc. #106) at 2.  Plaintiff does not assert a separate claim for preferential treatment of Muslims, but uses such evidence to show that Warden Conner retaliated against those inmates who filed complaints.  See id.  Plaintiff seems to imply that because Muslim inmates did not file grievances, they received adequate food.  Plaintiff's theory seems at odds with

                                                                (continued...)

Program Statement 4700.04 of the BOP Food Service Manual provides that heart healthy alternatives are food selections prepared without the addition of salt or fat. The SHU menus provided heart healthy alternatives and inmates could receive them upon request. Plaintiff made such a request and has been on heart healthy alternatives since at least February of 2004. Warden Conner, however, instructed staff to ensure that plaintiff does not get heart healthy meals.

On February 2, 2003, plaintiff complained of "vertigo-like dizziness" and headaches since January 21, 2003. Plaintiff attributed his ailments to reduced food portions in the SHU. On February 11, 2003, plaintiff filed an administrative complaint alleging that (1) on January 28, 2003, prison administration instructed staff to substitute luncheon meat sandwiches for hot dinner meals; (2) for seven to ten days, prison staff served spoiled luncheon meat; (3) before January 28, 2003, prison staff began shaving food portions by one third; (4) plaintiff's heart healthy meals were always missing fruit and the heart healthy meals were sometimes substituted with a regular tray; and (5) food service routinely served spoiled leftovers because of improper handling. See Exhibit A-12 to Memorandum In Support Of Defendants' Motion To Dismiss, Or In The Alternative, Motion For Summary Judgment (Doc. #25) filed December 22, 2003.[6] On March 5, 2003, in response to plaintiff's administrative complaint, Warden Conner stated that

---

[5](...continued)
his claim that someone stabbed a prison guard so that Muslim inmates could receive three meals a day.

[6]     Plaintiff did not attach a copy of his administrative complaint, but the Court considers the indisputably authentic copy which defendant attached to an earlier motion. See Steele, 355 F.3d at 1212.

he cut meals and had foods removed from inmate trays because of complaints against his top men by plaintiff and two other inmates.[7]

On June 12, 2003, plaintiff filed suit under 42 U.S.C. § 1983 against Warden Connor and D.W. Reed, a correctional officer at USP-Leavenworth.  Plaintiff alleged that (1) Reed violated his constitutional rights by assaulting him; (2) in retaliation for his assault complaint against Reed, defendants gave him inadequate medical treatment and food, denied him sanitation, destroyed his files, planted a knife in his cell, paid an inmate to rape him, made numerous attempts to frame him for drug use, and threatened to write him up; (3) after plaintiff complained of the assault by Reed, Warden Conner instructed prison staff to affiliate all black prisoners as gang members and told inmates to make sexual advances to plaintiff; and (4) Warden Conner paid another inmate to rape plaintiff.  See Civil Rights Complaint (Doc. #1).

On April 2, 2004, the Court dismissed plaintiff's complaint without prejudice for failure to exhaust administrative remedies.  It granted plaintiff leave to amend his complaint, however, to include only his exhausted claim that in retaliation for his complaint of assault by a prison guard, Warden Conner denied him adequate food beginning January 28, 2003.  On April 9, 2004, plaintiff filed an amended complaint. Liberally construed, plaintiff's amended complaint asserts cruel and unusual punishment and retaliation for filing prison grievances.  Plaintiff alleges that (1) by instructing staff to cut food portions, to deny inmates hot dinner meals and to deny plaintiff heart healthy meals, Warden Conner subjected him to cruel and unusual punishment and (2) Warden Conner instructed staff to cut food portions, delete hot dinner meals and deny plaintiff heart healthy meals in retaliation for plaintiff's filing of grievances.

---

[7]     Plaintiff's amended complaint does not state when Warden Conner made this statement or to whom, but the Court has supplied the date from plaintiff's appeal of his administrative grievance.

## Analysis

### I.      Exhaustion Of Administrative Remedies

Defendant first argues that the Court should dismiss plaintiff's entire complaint because it includes unexhausted claims based on (1) the denial of food on November 27, 2002, (2) preferential treatment of Muslim inmates, (3) denial of a medical diet in May of 2003 and (4) suspicious behavior by medical staff which indicates that prison officials are trying to murder plaintiff.  Liberally construed, the complaint alleges these facts merely as support for plaintiff's claim that defendants denied him adequate food beginning in January of 2003.[8]  The Court specifically ordered plaintiff to limit his allegations to the one claim of inadequate food because that is the sole claim which he exhausted.  Accordingly, the Court reads plaintiff's complaint as only asserting that claim.

### II.      Eighth Amendment Claim

Plaintiff alleges that by instructing staff to discontinue hot dinner meals, cut food portions, and deny

---

[8]      Plaintiff did provide evidence of an incident on November 27, 2002 but that incident related to low blood sugar after plaintiff was denied three consecutive meals.  Plaintiff does not allege that the incident on November 27, 2002 is related to the policies he challenges in the complaint (i.e. reduced food portions, cold dinners and denial of heart healthy meals) or that Warden Conner was involved in the decision to deny him three meals on November 27, 2002.  Moreover, plaintiff did not exhaust administrative remedies as to the incident on November 27, 2002 and he has not produced admissible evidence that Warden Conner was involved in that incident.  The Court therefore does not construe plaintiff's amended complaint as stating a claim based on the incident on November 27, 2002.

As explained above, plaintiff does not assert a separate claim for preferential treatment of Muslims, but uses such evidence only to show that Warden Conner retaliated against those inmates who filed complaints.

Plaintiff's request for a medical diet in May of 2003 does not appear to be a separate claim but only evidence that plaintiff complained to medical staff that his regular diet was inadequate and caused him extreme fatigue and weight loss.

Plaintiff concedes that his amended complaint did not intend to assert a claim of attempted murder by prison staff.

-8-

plaintiff heart healthy meals, Warden Conner subjected him to cruel and unusual punishment.  The

Constitution does not permit inhumane prisons, but neither does it mandate comfortable ones.  To establish

an Eighth Amendment violation, plaintiff must show that the "alleged deprivation is objectively, sufficiently

serious, and the prison official acts with deliberate indifference to inmate health or safety."  Penrod v.

Zavaras, 94 F.3d 1399, 1406 (10th Cir. 1996); see Estelle v. Gamble, 429 U.S. 97, 104 (1976).  The

Eighth Amendment requires that a prison provide inmates with adequate food, Farmer v. Brennan, 511

U.S. 825, 832 (1994), and food that is "nutritionally adequate."  Ramos v. Lamm, 639 F.2d 559, 570-71

(10th Cir. 1980); see Green v. Ferrell, 801 F.2d 765, 770 (5th Cir. 1986) (Eighth Amendment requires

inmates be provided well-balanced meals containing sufficient nutritional value to preserve health).  A

"substantial" deprivation of food may be sufficiently serious to state a conditions of confinement claim under

the Eighth Amendment.  Thompson v. Gibson, 289 F.3d 1218, 1222 (10th Cir.), cert. denied, 537 U.S.

978 (2002).  The severity and duration of deprivations are inversely proportional, so that minor

deprivations suffered for short periods will not rise to an Eighth Amendment violation, while substantial

deprivations of food may meet the standard despite a shorter duration.  DeSpain v. Uphoff, 264 F.3d 965,

974 (10th Cir. 2001).

Defendant seeks summary judgment on plaintiff's Eighth Amendment claim, arguing that plaintiff

has not presented evidence that (1) the condition complained of is sufficiently serious or (2) Warden

Conner acted with deliberate indifference to plaintiff's health or safety.  As to the first argument, defendant

has presented evidence that (1) in January of 2003, prison officials implemented a new procedure whereby

prison staff gave SHU inmates cold dinners when they picked up the inmate trays from lunch; (2) SHU

inmates continued to receive two hot meals each day – at breakfast and at lunch; (3) in 2003 and 2004,

SHU inmates received approximately 2,473 calories per day and 2,910 calories per day respectively and more than 100 per cent of 17 of 18 nutrients. Plaintiff has presented evidence that (1) most of the menu items (such as fruit juices and salads) were never served to him; (2) in counting the total calories and nutrients served, defendant counted two sandwiches for dinner even though inmates could receive only one; and (3) he lost a lot of weight and suffered from extreme fatigue because Warden Conner cut food portions below the portions listed on the menus. Plaintiff's statements are somewhat vague, but taken as a whole with his other statements, a jury could reasonably conclude that Warden Conner denied plaintiff "the minimal civilized measure of life's necessities" consistent with contemporary standards. Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

Defendant also argues that plaintiff has not presented evidence that Warden Conner acted with deliberate indifference to plaintiff's health or safety. Prison officials act with deliberate indifference to an inmate's health if they know that he faces a substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it. See Farmer, 511 U.S. at 835-37. Plaintiff has presented evidence that Warden Conner intentionally cut food to the extent that plaintiff lost a lot of weight and suffered from extreme fatigue. In such circumstances, a reasonable jury could find that Warden Conner was aware of and disregarded an excessive risk to plaintiff's health.[9] See id. The Court therefore overrules defendant's motion for summary judgment on plaintiff's Eighth Amendment claim.

---

[9]     In his opposition brief, plaintiff states that he was served spoiled meat for some ten days beginning in late January of 2003 and that spoiled food was served regularly. Although plaintiff raised the issue of spoiled food in his administrative complaint, he did not include such allegations in his complaint or amended complaint. Moreover, in his administrative complaint, plaintiff stated that inmates were served spoiled food because of improper food handling, not because of any decision by Warden Conner.

III.    **Retaliation Claim**

Plaintiff also alleges that Warden Conner instructed staff to discontinue hot dinner meals, cut food portions and deny plaintiff heart healthy meals because he filed grievances.  Absent clear abuse or caprice in the exercise of discretion, prison management is not subject to judicial review.  See Marchesani v. McCune, 531 F.2d 459, 462 (10th Cir. 1976).  A prison official, however, may not retaliate against an inmate for exercising a constitutional right.  See Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998).  This principle applies even where the action taken in retaliation would be otherwise permissible. Id.  The Tenth Circuit has noted:

> it is not the role of the federal judiciary to scrutinize and interfere with the daily operations of a . . . prison, and our retaliation jurisprudence does not change this role.  Obviously, an inmate is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he has engaged in protected activity. Accordingly, a plaintiff must prove that but for the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place.  An inmate claiming retaliation must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights.

Id. (citations and quotations omitted).

The First Amendment protects the right to free speech and the right to petition the government for redress of grievances.  See Crawford-El v. Britton, 523 U.S. 574, 592 (1998).  Any form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom.  Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000), cert. denied, 533 U.S. 916 (2001)  Absent an employment or a contractual relationship between the parties, plaintiff must allege and prove the following three elements: (1) that he engaged in constitutionally protected activity; (2) that defendant caused him to suffer an injury which would

-11-

chill a person of ordinary firmness from continuing to engage in that activity; and (3) that defendant's conduct was substantially motivated by plaintiff's exercise of constitutionally protected conduct.  See id.

The Court first addresses whether plaintiff has stated a claim for violation of his First Amendment rights.  Plaintiff alleges that he filed administrative grievances against prison officials, which is constitutionally protected activity.  See Purkey v. Green, 28 Fed. Appx. 736, 745-46 (10th Cir. Aug. 17, 2001) (punishing prisoner for filing grievances states claim for denial of access to courts and First Amendment violation); Smith v. Maschner, 899 F.2d 940, 947-48 (10th Cir. 1990) (prison officials may not retaliate against inmate for exercising constitutional right, even where action taken in retaliation would otherwise be permissible); Wildberger v. Bracknell, 869 F.2d 1467, 1468 (11th Cir. 1989) (retaliation for filing lawsuits and administrative grievances violates inmate right of access to courts and First Amendment rights of inmate).  As to the second element, plaintiff alleges that Warden Conner instructed staff to discontinue hot dinner meals, cut food portions and deny plaintiff heart healthy meals.  These allegations are sufficient to allege that plaintiff suffered an injury which would chill a person of ordinary firmness from continuing to file administrative grievances against prison officials.  Moreover, this question is ordinarily a question of fact. See Bell v. Johnson, 308 F.3d 594, 603 (6th Cir. 2002); Davidson v. Chestnut, 193 F.3d 144, 150 (2d Cir. 1999) (question whether one-day denial of exercise opportunities was de minimis is "factual in nature").  As to the third element, plaintiff alleges that in March of 2003, Warden Conner stated that he cut meals and removed food items because of complaints by plaintiff and other inmates, which is sufficient to show that defendant's action was substantially motivated by plaintiff's filing of grievances.

Defendant does not address the elements of a retaliation claim set forth in Worrell, but argues that plaintiff must show that the retaliatory action did not advance legitimate goals of the correctional institution

-12-

or was not tailored narrowly enough to achieve such goals.  See Defendant's Memorandum (Doc. #102) at 15.   As explained above, a prison official may not retaliate against an inmate for exercising a constitutional right even where the action taken in retaliation would be otherwise permissible.  See Peterson, 149 F.3d at 1144.  Even if Warden Conner's actions advanced legitimate goals of the prison, they nevertheless violated plaintiff's First Amendment rights if they were substantially motivated by plaintiff's exercise of constitutionally protected conduct.

Although defendant does not address the elements in Worrell, it asserts that in response to 15 inmate assaults on staff between October of 2002 and January of 2003, Warden Conner changed the procedures for SHU meals so that when staff picked up lunch trays, they gave inmates cold dinner meals. Defendant's argument goes to the third element in Worrell, i.e. whether defendant's action was substantially motivated by plaintiff's exercise of constitutionally protected conduct.  Initially, however, the Court notes that defendant has not offered admissible evidence of Warden Conner's motivation in changing the procedure.  Defendant has presented only the affidavit of BOP counsel and an unauthenticated document which purportedly lists various inmate assaults.  See Declaration Of James B. Crook ¶ 8 and Exhibit 3 to Crook Declaration, attached to Defendant's Memorandum In Support Of Motion To Dismiss, Or In The Alternative, Motion For Summary Judgment (Doc. #102).  Because defendant has not presented admissible evidence in support of its argument on the causation element of a retaliation claim, the Court must overrule defendant's motion for summary judgment on that claim.[10]

---

[10]     In any event, defendant does not explain why Warden Conner cut food portions or why he denied plaintiff heart healthy meals.

-13-

## IV.    Qualified Immunity

Defendant argues that it is entitled to qualified immunity because plaintiff has no "clearly established" right to hot dinner meals. Defendant ignores the fact that plaintiff's complaint also alleges that Warden Conner cut food portions and denied plaintiff heart healthy meals so that plaintiff lost a lot of weight and suffered from extreme fatigue. Inmates have "clearly established" rights to receive adequate food and to not receive less food simply because they file grievances. See supra text, parts II and III. The Court overrules defendant's motion for summary judgment based on qualified immunity.

## V.    Plaintiff's Motion For Summary Judgment

On March 25, 2005, plaintiff filed a motion for summary judgment. Plaintiff's motion does not cite evidence in support of his claim, but contains merely argument which primarily addresses why the Court should not grant defendant's motion to dismiss or for summary judgment. The Court overrules plaintiff's motion for failure to comply with D. Kan. Rule 56.1.

## VI.    Appointment Of Counsel

Plaintiff has requested counsel. See Plaintiff's Ex Parte Application For Appointment Of Counsel (Doc. #6) filed July 30, 2003; plaintiff's Motion To Renew Filed Documents [Including Motion For Appointment Of Counsel] (Doc. #49) filed April 13, 2004; see also Amended Complaint (Doc. #48) at 5 (cannot provide additional information because of lack of legal assistance and inadequate resources). The Court previously overruled plaintiff's requests. At this time, the Court reconsiders its prior rulings. In determining whether to appoint counsel under 28 U.S.C. § 1915(e)(1), the Court considers several factors including (1) the merit of the litigant's claims; (2) the nature of the factual issues raised in the claims; (3) the litigant's ability to present his or her claims; and (4) the complexity of the claims involved. See

-14-

Williams v. Meese, 926 F.2d 994, 996 (10th Cir. 1991).  Although the claims in this case may not be

tremendously complex, the Court has learned through experience that it is virtually impossible for prisoner

plaintiffs to conduct discovery and meet court-ordered deadlines within their institutional confines.  In

addition, plaintiff's amended complaint and briefing on defendant's motion for summary judgment are

difficult to follow and the Court cannot ascertain precisely what evidence plaintiff has in support of his

claims.  Finally, plaintiff has attempted to obtain discovery in this case and that process could be greatly

facilitated with court-appointed counsel.  The Court therefore finds that appointment of counsel will

enhance plaintiff's ability to proceed with discovery and present his claims and will assist the Court in

resolving the case in a fair and orderly manner.

**IT IS THEREFORE ORDERED** that Defendant's Motion To Dismiss, Or In The Alternative,

Motion For Summary Judgment (Doc. #101) filed February 18, 2005 be and hereby is **OVERRULED.**

**IT IS FURTHER ORDERED** that Plaintiff's Reply To Defense Motion (Doc. 101 & 102)

And/Or Request For Summary Judgment (Doc. #107) filed March 25, 2005 be and hereby is

**OVERRULED**.

**IT IS FURTHER ORDERED** that on or before **August 10, 2005**, Magistrate James P. O'Hara

shall appoint counsel for plaintiff.

Dated this 29th day of July, 2005 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

-15-